UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JULIA AGUIRRE RODRIGUEZ,<br><br>    Petitioner,<br><br>    v.<br><br>MERRICK GARLAND *et al.*,<br><br>    Defendants. | Case No. 2:21-cv-00437-RFB-EJY<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court is Petitioner Aguirre Rodriguez's Emergency Motion for Temporary Restraining Order ("TRO"). ECF No. 4. For the reasons below this Court grants Petitioner's motion.

## II. PROCEDURAL BACKGROUND

On March 16, 2021, Petitioner filed a Petition for Writ of Habeas Corpus and Motion for Temporary Restraining Order. ECF Nos. 1,4.

## III. FACTUAL FINDINGS

The Court makes the following factual findings. On May 4, 2019, the Department of Homeland Security ("DHS") detained Petitioner Rodriquez after she was arrested by the Las Vegas Metropolitan Police Department ("Metro"). Petitioner Rodriquez was transferred to Immigration

and Customs Enforcement ("ICE") where the agency sought to reinstate a prior removal order. Rodriguez decided to remain in custody in the United States to litigate her immigration status and seek relief. After being detained for six months, Petitioner Rodriguez had a hearing in front of Immigration Judge (IJ), Munish Sharda, who determined that he had no jurisdiction to hear her bond request; he also found Petitioner Rodriguez to be a flight risk. On December 5, 2019, Petitioner Rodriquez had another bond hearing with Immigration Judge Daniel Daugherty. In assessing Petitioner's dangerousness to the community, IJ Daugherty found that although Petitioner had a criminal history, it did not include any violent offense. In assessing flight risk, the IJ noted that Petitioner had a permanent residence in the United States and extensive family ties. Therefore, IJ Daugherty granted Petitioner's request for release on bond for $2,500.00. While Petitioner Rodriguez was on bond, she attended her only court appearance.

DHS appealed the IJ Daugherty's order. On January 19, 2021, the Board of Immigration Appeals ("BIA") vacated IJ Daugherty's decision, reinstated IJ's Sharsa's order, and ordered Petitioner be detained without bond. In making its determination, the BIA found that DHS met its clear and convincing burden showing that Petitioner is a flight risk. The BIA found that, notwithstanding Petitioner's extensive ties, her prior immigration violations, including multiple unlawful entries, a reinstated removal order, and a long residence in the United States without immigration status demonstrated she was a flight risk.

Petitioner Rodriguez is a forty-seven-year-old citizen of Mexico. Petitioner Rodriguez has lived in the United States since she was sixteen years old. She has four children who are United States citizens. Her youngest child has been diagnosed with autism. Petitioner Rodriquez submitted several affidavits in her hearings demonstrating that she has extensive ties to the community, including active membership and leadership position at AzulBlue which is a non-profit organization devoted to families who have autistic children. Also, Petitioner Rodriguez is the primary care provider for her fourteen-year-old autistic son. She gets him ready for school, assists with his homework, monitors his speech therapy sessions, and motivates him to be active and social every day.

## IV. LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the Petitioner is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a Petitioner must establish four elements: "(1) a likelihood of success on the merits, (2) that the Petitioner will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a Petitioner can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the Petitioner's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, a court may issue a temporary restraining order without notice to the adverse party if it finds that specific facts in a motion "clearly show" immediate irreparable harm and the movant's attorney certifies that efforts at notice have been made. Fed. R. Civ. P. 65.

Aliens facing prolonged detention while their petitions for review of their removal orders are pending are entitled to a bond hearing before a neutral immigration judge. Casas-Castrillon v. Department of Homeland Security, 535 F.3d 942 (9th Cir. 2008). Federal district courts have habeas jurisdiction under 28 U.S.C. § 2241 to review such "bond hearing determinations for constitutional claims and legal error." Singh v. Holder, 638 F.3d 1196, 1200 (9th Cir. 2011)(citations omitted). "Given the substantial liberty interests at stake in Casas bond hearings,

the government must prove by clear and convincing evidence that continued detention is justified." Id. Factual findings at such hearings are reviewed for clear error and legal conclusions are reviewed de novo. See generally, Hoyle v. Ada County, 501 F.3d 1053, 1059 (9th Cir. 2007) (noting the standards that apply for petitions under Section 2241).

### V. DISCUSSION

The Court finds that the requirements for issuing a temporary restraining order are satisfied. Petitioner has demonstrated a serious question going to the merits of her claim that the BIA committed error when it found that DHS had not waived certain arguments and when it found that agency had established by clear and convincing evidence that Petitioner Rodriguez was a flight risk.

As initial matter, the Court finds that Rodriguez has properly exhausted her administrative remedies and that in any event the Court would exercise its discretion to review the BIA's decision in this case. Singh, 638 F.3d at 1203, n.3.

The Court also finds that Petitioner Rodriguez has established a likelihood of success or at least raised a serious question as to whether the agency waived certain arguments about Rodriguez' immigration history as a basis for denial of bond when it did not provide a copy of the transcript of the underlying proceeding and does not appear to deny that it did not make the explicit arguments it raised on appeal in the underlying proceeding.

The Court also finds that Rodriguez has established a likelihood of success on the merits or at least raised a serious question as to DHS' failure to demonstrate by clear and convincing evidence that Rodriguez is a flight risk. The Court finds that the BIA considered only certain aspects of Rodriguez' immigration history and not its entirety. The BIA acknowledged that Rodriguez has extensive family ties and a permanent residence for many years but then went on to find that these facts are somehow outweighed by Rodriguez' "history of numerous immigration violations, including multiple unlawful entries, a reinstated removal order, and a long residence in the United States without immigration status, as well as a recent immigration-related criminal

charge." This latter single sentence, however, represents a simplistic and inaccurate summary of Rodriguez' immigration history. The BIA failed to note or consider several relevant and significant aspects of Petitioner Rodriguez's history which militate against a finding that she is a flight risk. The BIA failed to note that Rodriguez has not had an immigration violation in over 15 years—since the date of the birth of her youngest son for whom she is the primary caregiver. It failed to consider that Rodriguez when initially detained chose to remain in custody to litigate her immigration and criminal issues, and she did not flee or abscond when released on bond. The BIA failed to acknowledge that she actually attended her one court appearance after being released on bond.

Moreover, the Court further finds that it was improper and illogical for the BIA to conclude that Rodriguez' "long residence" in the United States which has led to her having children who are citizens, and which has led to her establishing a residence and life here with substantial community ties indicates that she is more likely to flee. These facts support the opposite conclusion. Furthermore, and importantly, the Court also finds that the BIA failed to consider Rodriguez' pending I-589 Application for Asylum and I-918A Petition for U Nonimmigrant Status—both of which are currently under consideration. And both of these applications were filed prior to the issuance of the BIA's decision in this case. Rodriguez' U-visa application is based upon her being a victim of domestic violence and the Las Vegas Metropolitan Police Department issuing her a Form I-918 U-Nonimmigrant Status Certification. The BIA had authority to take administrative notice of such facts and should do so when "documents might change the result of proceedings." Dent v. Holder, 627 F.3d 365, 371–73 (9th Cir. 2010).[1] The Court thus finds that Rodriguez' immigration history when considered in its entirety clearly reflects an individual who

---

[1] The Court further notes that even if the BIA did not take judicial notice of such facts as it should have, this Court, as a reviewing court, can and does take judicial notice of these official immigration documents. Singh v. Ashcroft, 393 F.3d 903, 905 (9th Cir. 2004); Dajani v. Holder, 607 F. App'x 663, n 2 (9th Cir. 2015)(finding that although a country report was not part of the record before the BIA, federal courts may take judicial notice of events that occur after the BIA issues a decision). The Ninth Circuit also found that courts may take judicial notice to prevent an injustice when the government successfully shields its documents from a person who ought to have access to them, particularly when the documents might change the result of the proceedings. Cardenas v. Lynch, 669 F. App'x 354 (9th Cir. 2016).

currently is seeking to address her legal immigration issues and who has, and would, appear at immigration proceedings. The Court therefore finds that Petitioner Rodriguez is likely to be successful on the merits of her claim that it was error for the BIA to find that Petitioner Rodriguez' immigration history and record provides clear and convincing evidence that she is currently a flight risk.

Petitioner Rodriguez has also shown that she is likely to face irreparable harm because re-detention would deprive her of her liberty and separation form her dependent minor son could uniquely harm him due to his needs as an autistic child.

This Court also finds that a balance of the equities balance in Petitioner's favor, and that it is in the public interest to have accurate determinations in legal proceeding, which includes decisions of whether to detain and remove individuals from the United States. This Court also finds that the requested relief which it is ordering is narrowly tailored to Petitioner's specific needs regarding her due process rights.

The Court further finds an order may issue in this case without notice to the Defendants given the irreparable harm that should befall Petitioner Rodriguez if no order issues and given the fact that they have been made aware of this motion to the Court by Petitioner's counsel.

Accordingly, the Court will grant Petitioner's motion for a temporary restraining order. The Defendants shall be and are enjoined for at least 14 days from enforcing the BIA's January 19, 2021 Order revoking Petitioner Rodriguez' bond and ordering her detained. The Defendants will be so enjoined until the hearing in this case on the Petitioner's Motion for Temporary Restraining Order.

### VI. CONCLUSION

**IT IS THEREFORE ORDERED** that the Emergency Motion for Temporary Restraining Order (ECF No. 4) is GRANTED for now. The Department of Homeland Security and the Department of Immigration and Customs Enforcement are hereby ORDERED not to enforce the BIA's January 19, 2021 Order.

**IT IS FURTHER ORDERED** that the January 19, 2021 Order shall be suspended and held in abeyance until the resolution of this Motion or Petition. This Court's Order shall expire in 14 days.

**IT IS FURTHER ORDERED** that a hearing regarding the Motion for Temporary Restraining Order (ECF No. 4) is set in this case for April 1, 2021 at 11:00 a.m. by videoconference. The details of this videoconference shall be provided by the Court prior to the hearing.

**IT IS FURTHER ORDERED** that Petitioner shall serve a copy of this Order on Defendants and that Defendants shall have until March 25, 2021 to file a response to the Motion for Temporary Restraining Order (ECF No. 4). The Petitioner shall file any reply by March 30, 2021.

DATED: March 18, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**